# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **M & B OIL, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CV-00250-NCC |
| | ) |
| **FEDERATED MUTUAL INSURANCE** | ) |
| **COMPANY and** | ) |
| **CITY OF ST. LOUIS,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff M&B Oil, Inc.'s Motion to Remand (Doc. 39) and the interrelated Motions to Dismiss filed by Defendants Federated Mutual Insurance Company and the City of St. Louis (Docs. 33, 35). The Motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 41). For the following reasons, Plaintiff M&B Oil, Inc.'s Motion to Remand (Doc. 39) will be **DENIED**, Defendants Federated Mutual Insurance Company's Motion to Dismiss (Doc. 33) will be **DENIED**, and Defendant the City of St. Louis' Motion to Dismiss (Doc. 35) will be **GRANTED**.

## I. Background

Plaintiff M&B Oil, Inc. ("Plaintiff") filed this action for breach of contract against Defendant Federated Mutual Insurance Company ("Federated") (Count I) and for detrimental reliance against Defendant the City of Saint Louis ("the City") (Count II) on June 5, 2020, in the Circuit Court of Saint Louis City, Missouri (Doc. 4). In the Petition, Plaintiff alleges that on February 2, 2019, Plaintiff sustained damage due to a freezing water pipe on its property located

at 2501 N. Grand Blvd., St. Louis, MO 63106.  Plaintiff alleges that it relied on the City's statement through the City of St. Louis Fire Department that the City was shutting off the water to the premises, but the City did not shut off the water and did not advise either the Fire Department or Plaintiff of this.  Plaintiff further alleges that Federated refused to provide coverage for the damage incurred as a result of this incident and that the denial was vexatious and in bad faith.  Specifically, Plaintiff alleges that "this refusal to pay the value of the damage was vexatious and in bad faith as it was without reasonable cause or excuse, in that Defendant has unreasonably delayed payment of the loss, and has no basis for not paying the claim other than to unnecessarily delay payment, thereby entitling plaintiff to the penalties set for in Mo. Rev. Stat. § 375.420, including attorneys' fees" (*Id.* at ¶10).  Plaintiff indicates that it sustained damages to its premises in excess of $400,000.

On February 26, 2021, Federated removed the action to this Court, alleging that the Court has subject matter jurisdiction pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) (Doc. 1).  Upon review of the Notice of Removal, the Court found Federated had not met its burden to establish this Court's subject matter jurisdiction and directed Federated to show cause why this action should not be remanded for want of jurisdiction (Doc. 13).  Federated timely complied and the Court determined it properly had subject matter jurisdiction (Docs. 20, 30 at 1).  Both Federated and the City filed Motions to Dismiss which were subsequently denied without prejudice in light of the Court permitting Plaintiff to file a First Amended Complaint (Doc. 30).

In its First Amended Complaint, Plaintiff amends its pleading as to Count II against the City and adds a claim, Count III, for inverse condemnation against the City (Doc. 22-1).  Specifically, in Count II, Plaintiff now alleges that it relied on the statement of the City through

2

the Water Department, not the Fire Department, that it was shutting off the water to the premises, but the City did not shut off the water and did not advise either the Fire Department or Plaintiff of this. In Count III, Plaintiff alleges, the City's "use of its property, namely the water piping system, was unreasonable" causing damage to the property in excess of $400,000. Count I against Federated remains unchanged.

Plaintiff now moves to remand the amended pleading back to state court (Doc. 39) and Defendants have renewed their motions to dismiss (Docs. 33, 35).

## II. Analysis

**A. Motion to Remand**

The propriety of removal to federal court depends on whether a claim comes within the scope of the federal court's subject matter jurisdiction. *See* 28 U.S.C. § 1441(b). The party seeking removal and opposing remand has the burden to establish federal subject matter jurisdiction. *Turntine v. Peterson*, 959 F.3d 873, 881 (8th Cir. 2020). Generally, a court must resolve all doubts about federal jurisdiction in favor of remand to state court. *Mensah v. Owners Ins. Co.*, 951 F.3d 941, 943 (8th Cir. 2020). Under 28 U.S.C. § 1332(a), the Court has subject matter jurisdiction over cases where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the litigants. *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 619-20 (8th Cir. 2010).

Federated removed this action on the basis of diversity jurisdiction and argued that the City was improperly joined in this case in order to defeat diversity jurisdiction. Alternatively, in their response to the Court's show cause order, Federated argued that under the doctrine of "snap removal" the Court had diversity jurisdiction under 28 U.S.C. § 1441(b)(2) because the City had not been served at the time of removal. Section 1441(b)(2) states, a case may not be removed

3


based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants" is a citizen of the forum state. While the statute plainly does not allow removal once a forum defendant has been properly served, courts are divided about the permissibility of this type of "snap removal," where a defendant removes a case before the plaintiff has a chance to serve the forum defendant.

The Eighth Circuit has not addressed the propriety of "snap removal." Other circuits have concluded section 1441(b)(2)'s plain language allows for removal until a forum defendant has been served. *See Texas Brine Co., LLC v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485-87 (5th Cir. 2020) (explaining section 1441(b)(2) unambiguously precludes removal only when a forum defendant has been served, and allowing removal otherwise does not yield absurd results that hinder the statute's apparent purpose); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705-06 (2d Cir. 2019) (concluding "Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law" and such a reading is not absurd "merely because it produces results that a court or litigant finds anomalous or perhaps unwise" (quotation marks omitted)); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152-54 (3d Cir. 2018) (allowing snap removal does not contravene Congress' apparent purpose to address fraudulent joinder, and such an outcome is not so "outlandish as to constitute an absurd or bizarre result").

Meanwhile, this district has taken three different approaches: (1) permitting snap removals based on the plain language of the statute, (2) remanding snap removals because they are inconsistent with the legislative intent behind the forum defendant rule and the purposes of removal, and (3) allowing snap removals only when at least one defendant has been served, based on a construction of the word "any" in section 1441(b)(2). *Tillman v. BNSF Ry. Co.*, No.

4

1:20 CV 00178 SNLJ, 2021 WL 842600, at *2 (E.D. Mo. Mar. 5, 2021) (collecting cases); *Laster v. Monsanto Co.*, No. 4:18-CV-397 CAS, 2018 WL 1566846, at *2 (E.D. Mo. Mar. 30, 2018) (also collecting cases). Following the plain, unambiguous language of the statute and in line with this Court's more narrow application of it, the undersigned determined that where, as is the case here, one defendant had been served but the forum defendant had not been served before removal, that section 1441(b)(2) does not preclude removal. *See Czapla v. Republic Servs., Inc.*, 372 F. Supp. 3d 878, 881 (E.D. Mo. 2019) (acknowledging the Court's more recent narrow application of § 1441(b) requiring service on at least one defendant before the case may be removed). As such the Court cited to *Tillman* in reference to its detailed overview of the doctrine of "snap removal" when finding that Federated had indeed established the Court's subject matter jurisdiction and granting Plaintiff the right to amend its complaint, an action the Court could not take without subject matter jurisdiction.

Nevertheless, Plaintiff filed the current motion to remand his amended complaint noting the lack of diversity of citizenship.[1] Thus, the question now before the Court is whether Plaintiff's amendment alters the Court's prior reasoning and the applicability of the "snap removal" doctrine. The Court finds that it does not. In its amended complaint, Plaintiff merely added a claim against the City and amended its prior claim against the City. In the case of a removed action, the diversity inquiry occurs at the time of removal and later events can, but do not always, deprive a court of jurisdiction. *See e.g., Anderson v. Hoffman*, No. 2:20 CV 87 SPM, 2021 WL 329779, at *2 (E.D. Mo. Feb. 1, 2021) (in the context of the amount of controversy; "[t]he amount of controversy is determined at the time of removal, and subsequent events do not

---

[1] Plaintiff focuses its argument on Federated's assertion that the City has been misjoined. However, the Court need not determine the issue of misjoinder because the "snap removal"

5

divest the court of jurisdiction after it attaches"). *See also Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) ("It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal."). Plaintiff did not add a new party whose citizenship would impact the diversity jurisdiction analysis. Were the Court to find a minor amendment to the claims against the forum defendant sufficient to overcome its initial diversity analysis, the statutory language permitting "snap removal" would be rendered meaningless as plaintiffs would rush to amend their complaints to effect remand. Thus, the Court finds Plaintiff's subsequent amendment insufficient to overcome the Court's prior determination that subject matter jurisdiction was established and Plaintiff's Motion to Remand is denied.

**B. Motions to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks

---

doctrine applies.

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. (citation omitted). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable references from the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

**1. Defendant Federated Mutual Insurance Company's Motion to Dismiss**

Plaintiff raises one claim against Federated for Breach of Contract (Count I) (Doc. 31). Plaintiff seeks recovery for the damage its property sustained as a result of a frozen pipe. Plaintiff alleges that Federated refused to provide coverage for the damage incurred and that the denial was vexatious and in bad faith. Specifically, relevant to the current motion, Plaintiff alleges, "this refusal to pay the value of the damage was vexatious and in bad faith as it was without reasonable cause or excuse, in that Defendant has unreasonably delayed payment of the loss, and has no basis for not paying the claim other than to unnecessarily delay payment, thereby entitling plaintiff to the penalties set for in Mo. Rev. Stat. § 375.420, including attorneys' fees" (*Id.* at ¶10). Federated now moves to dismiss the vexatious refusal portion of this claim, arguing that Plaintiff's allegations in support of the claim are insufficient as a matter of law (Doc. 33).

Under Missouri's vexatious refusal statute, a court or jury in a case against an insurance company may award damages in addition to the plaintiff's proven loss under the policy "if it appears from the evidence that such company has refused to pay such loss without reasonable

cause or excuse." Mo. Rev. Stat. § 375.420. "A claim of vexatious refusal to pay requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay and (3) that the insurer's refusal was without reasonable cause or excuse." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 907 (Mo. 2010) (en banc) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456-57 (Mo. 2006) (en banc)). A party must also plead a claim for breach of contract to establish a claim for vexatious refusal to pay. *Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) ("Under Missouri law, a vexatious refusal is a derivative of a breach-of-contract claim."); *Thomas Farms, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 1:18CV00196 AGF, 2019 WL 460503, at *3 (E.D. Mo. Feb. 6, 2019) ("[A] claim for vexatious refusal to pay is necessarily predicated on a breach of an insurance policy.").

      The Court finds that Plaintiff has sufficiently alleged a claim for vexatious refusal to pay. Plaintiff alleges that its property was damaged on February 2, 2019 as a result of a freezing water pipe. Plaintiff further alleges that it had a policy with Federated, the policy provided coverage for this damage, Federated refused to provide coverage, and that the denial was vexatious and in bad faith. Plaintiff subsequently filed suit on June 5, 2020 and, without any apparent resolution, Federated removed the action to this Court on March 2, 2021. *Hale v. Safeco Ins. Co. of Illinois*, No. 4:10CV1143 TCM, 2010 WL 4272747, at *2 (E.D. Mo. Oct. 25, 2010) (finding plaintiff had sufficiently alleged a claim for vexatious refusal to pay when she alleged she was injured, defendant insurer refused to pay nearly five years later, and the long-standing refusal was without reasonable cause or excuse). Plaintiff has also properly alleged a breach of contract claim. Indeed, Federated's Motion does not purport to challenge the sufficiency of Plaintiff's breach of contract claim. *Cf. Diamond Shoppe Jewelers, LLC v. Fed. Mut. Ins. Co.*, No. 4:18CV1830 RLW, 2019 WL 4418619, at *2 (E.D. Mo. Sept. 16, 2019) (holding plaintiffs had

failed to state a claim upon which relief can be granted because, "[i]n addition to stating mere legal conclusions, Plaintiffs have not asserted a separate underlying claim for breach of the insurance policy or pleaded sufficient facts to establish such a contract as they have failed to allege any facts relating to the terms of the insurance policy or its performance."). Therefore, Federated's Motion to Dismiss will be denied.

**2. Defendant the City of St. Louis' Motion to Dismiss**

Plaintiff raises two claims against the City—detrimental reliance (Count II) and inverse condemnation (Count III) (Doc. 31). Specifically, Plaintiff alleges the City advised it that the City was shutting of the water to the premises but failed to turn off the water to Plaintiff's detriment (*Id.*). The City argues that Plaintiff's claims against it should be dismissed because inverse condemnation is Plaintiff's exclusive remedy at law and Plaintiff fails to state a claim for inverse condemnation under Missouri law (Doc. 35).

**a. Detrimental Reliance**

Plaintiff's claim for detrimental reliance (Count II) must be dismissed with prejudice as inverse condemnation is the exclusive remedy under Missouri law for Plaintiff's allegations. "[W]hen private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation." *Heins Implement Co. v. Missouri Highway & Transp. Comm'n*, 859 S.W.2d 681, 693 (Mo. 1993), *abrogated in part on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008). *See also Miller v. City of Wentzville,* 371 S.W.3d 54, 57 (Mo. Ct. App. 2012) ("Inverse condemnation is the exclusive remedy when private property is taken or damaged without compensation as a result of a nuisance operated by an entity that has the power of eminent domain."). Here, Plaintiff alleges its property was damaged by the City when its property was flooded as a result

9

of the City's failure to turn off the water supply to pipes that subsequently froze (Doc. 31).  The City has the power of eminent domain.  Mo. Const. art. VI. § 21.  The proprietary versus governmental function dichotomy Plaintiff urges the Court to consider properly applies to a sovereign immunity analysis which is unnecessary here.  *Clay Cty. Realty Co. v. City of Gladstone*, 254 S.W.3d 859, 866 (Mo. 2008) (internal citation and quotation marks omitted) (finding sovereign immunity cannot protect a city for inverse condemnation claims because it would negate the "constitutional command that property not be taken without just compensation"); *Byrom v. Little Blue Valley Sewer Dist.*, 16 S.W.3d 573, 577 (Mo. 2000) (providing recovery for inverse condemnation is available even in the absence of a waiver of sovereign immunity).  As such, Plaintiff's allegation that its property was damaged as a result of the City's water supply must be raised under a theory of inverse condemnation.  The Court will, accordingly, dismiss Plaintiff's claim for detrimental reliance with prejudice.

### b. Inverse Condemnation

Plaintiff fails to sufficiently state a claim for inverse condemnation against the City.  In Missouri, the right to sue for inverse condemnation arises from the state constitution.  *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 920 (Mo. 2016).  The Missouri Constitution provides that "private property shall not be taken or damaged for public use without just compensation."  Mo. Const. art. I. § 26.  "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property."  *Miller*, 371 S.W.3d at 57 (internal quotation marks omitted).  The elements of an inverse condemnation action based on nuisance are (1) notice, (2) an unreasonable operation in spite of that notice, (3) injury, (4) damage, and (5) causation.  *Scott Fam. Properties, LP v. Missouri Highways & Transportation Comm'n*, 546 S.W.3d 605, 608

(Mo. Ct. App. 2018).

Plaintiff alleges that the City was "advised of the danger of freezing pipes and the subsequent damage it could do to property" (Doc. 31 at ¶15). This statement alone, however, is insufficient to establish that the City had actual or constructive notice of a defect. Plaintiff fails to indicate that the City knew about the specific pipes at issue or the condition of those pipes as allegedly defective or dangerous. In its response, Plaintiff asserts that calling to shut off the water because the pipes might freeze is sufficient notice but, again, even if this statement was included in the Amended Complaint, it would be unclear to whom notice was given, the nature of the notice (merely to discontinue paying for service or to ensure the proper maintenance of the property), and whether a defective or dangerous condition causing the pipes to freeze was reported. If notice is not properly effected then the City's duty to remedy the alleged defect does not arise and its failure to correct or discontinue the unreasonable use is insufficient to establish the unreasonable operation of the water system as its operation alone does not *per se* constitute a nuisance. *Miller*, 371 S.W.3d at 60 (noting that duty is not a separate essential element of a cause of action for inverse condemnation based on nuisance, "[r]ather, the concept of 'duty' underpins the element of notice, that is, notice of an unreasonable use gives rise to a duty to correct it."); *Christ v. Metro. St. Louis Sewer Dist.*, 287 S.W.3d 709, 712 (Mo. Ct. App. 2009) (finding MSD could not be held liable for inverse condemnation for issues based upon an alleged failure to prospectively maintain or inspect the sewers). However, contrary to the City's position, the allegation of an affirmative act is not necessary if proper notice of the defect was effected. *Miller*, 371 S.W.3d at 61 (finding an affirmative act is not necessary as "it is the failure to correct or discontinue an unreasonable use after notice that gives rise to a nuisance."). The Court finds that further amendment may remedy this defect to the pleading. Therefore, the Court

will grant the City's Motion to Dismiss and afford Plaintiff a second opportunity to amend its complaint in accordance with this order.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff M&B Oil, Inc.'s Motion to Remand (Doc. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Federated Mutual Insurance Company's Motion to Dismiss (Doc. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant the City of St. Louis' Motion to Dismiss (Doc. 35) is **GRANTED**. Plaintiff's detrimental reliance claim (Count II) is **DISMISSED, with prejudice** and Plaintiff's inverse condemnation claim (Count III) is **DISMISSED, without prejudice**. A partial order of dismissal will be issued concurrently with this memorandum and order.

**IT IS FINALLY ORDERED** that Plaintiff shall be permitted to file an amended complaint in accordance with this memorandum and order within seven (7) days.

Dated this 6th day of August, 2021.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE